IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARRY PATRICK EMMETT, | § | |
| TDCJ-CID NO. 1383329, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION H-10-3610 |
| DR. BETTY WILLIAMS, *et al.*, | § | |
| Defendants. | § | |

<u>OPINION ON DISMISSAL</u>

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint pursuant to 42 U.S.C. § 1983, alleging that defendants Dr. Betty Williams, Ex-Warden Eileen Kennedy, Practice Manager Shanta Crawford, UTMB-Texas Tech Executive Medical Director Dr. Denise DeShields, and Texas Department of Criminal Justice Executive Director Brad Livingston acted with deliberate indifference to his serious medical needs by failing to provide him with the appropriate corrective lenses. (Docket Entry No.1). He also alleges that defendants' conduct violates the Eighth Amendment's prohibition against cruel and unusual punishment, "loss of enjoyment of life, equal protection, substantive due process clauses of the 14th Amend. U.S.C." (*Id.*, page 4).

The Court ordered that defendants Williams, DeShields, and Crawford be served with process and granted plaintiff's motion to add an unnamed Allred Unit optometrist as a defendant. (Docket Entry No.9). The Court later granted plaintiff's motions to add as parties the Texas Department of Criminal Justice ("TDCJ"), Texas Tech University ("TTU"), the University of Texas Medical Branch ("UTMB"), Correctional Managed Care ("CMC") (Docket Entry No.28), UTMB Director Dr. Callendar, and CMC Director Dr. Allen Hightower in their official capacities. (Docket Entry No.81).

Defendants Williams, DeShields, and Crawford have filed a motion for summary judgment (Docket Entry No.70), to which plaintiff has filed a late response.  (Docket Entries No.84, No.85).  Plaintiff has also filed a motion for leave to file a motion for summary judgment (Docket Entry No.88), to which defendants have filed a response.  (Docket Entry No.94). Plaintiff has further filed numerous other motions, which the Court will deny for reasons to follow.

After a thorough review of the pleadings, the entire record, and the applicable law, the Court will grant defendants' motion for summary judgment, deny plaintiff's motion for summary judgment, deny all pending motions, and dismiss all claims against all defendants.

## I.BACKGROUND

Plaintiff claims in mid-2007, he put in a request to receive state-issued eyeglasses. (Docket Entry No.1, page 4).  Plaintiff's medical records reflect that in January 2008, while incarcerated at the Beto Unit of TDCJ Correctional Institutions Division, he told a health provider that he needed eyeglasses.  (Docket Entry No.71-1, page 4).  Plaintiff submitted a sick call request for glasses in March 2008.  (*Id.*, page 10).  Plaintiff was given a Visual Acuity Test ("VAT") on March 10, 2008.  (Docket Entry No.1, page 15).  He told medical providers at that time that his free-world eyeglasses had been stolen.  (*Id.*).

After he transferred to the Allred Unit, plaintiff submitted three other sick call requests for glasses in March, April, and May 2008.  (*Id.*, pages 12-15).  On April 1, 2008, he was given his first VAT on the Unit, but he did not show for a second scheduled VAT.  (Docket Entry No.1, pages 17-18, 20).  On May 28, 2008, medical providers administered an optometry evaluation.  (*Id.*, page 19).  In mid-June 2008, plaintiff was given another optometry evaluation and referred to optometry.  (Docket Entries No.1, pages 21- 22; No.71-1, page 16).  In June and

November 2008, he submitted two more sick call requests about his optometry appointment. (Docket Entries No.1, pages 23-24; No.71-1, pages 17-18).   On November 21, 2008, plaintiff was evaluated by an optometrist and prescribed eyeglasses.  (Docket Entry No.71-1, page 19). State-issued eyeglasses were dispensed to plaintiff on December 12, 2008.  (Docket Entries No.1, page 25; No.71-1, page 20).  A notation on the form dispensing the glasses reflects that plaintiff had free-world glasses, which were not found when his cell was searched.  (*Id.*).

By letter dated March 8, 2009, plaintiff's mother requested a copy of plaintiff's eye-glass prescription.  (Docket Entry No.1-1, page 20).  On March 12, 2009, plaintiff missed a clinic visit due to lack of staff; his appointment was rescheduled.  (Docket Entry No.1, pages 26-27).  On the same day, plaintiff filed Step 1 Grievance 2009118890, in which he complained that the medical department had not honored his request to disclose his medical records to his mother and particularly, his eye-glass prescription.  (Docket Entry No.10, page 34).  On March 13, 2009, a TDCJ representative responded to plaintiff's mother regarding the requested copy.  (Docket Entry No.1-1, page 25).  Thereafter, plaintiff wrote to Dr. DeShields, the Texas Tech Executive Medical Director for Correctional Managed Health Care, complaining that his efforts to obtain a copy of his eyeglass prescription had been blocked.  (Docket Entry No.1-1, page 15).  Her office responded by letter on April 29, 2009, that he should address his complaints to medical staff through an informal process or by grievance.  (Docket Entry No.1-1, page 14).

On June 11, 2009, plaintiff requested permission to have free-world glasses sent to him in prison.  He was told that he could not have free-world glasses.  (Docket Entries No.1, page 28; No.71-1, page 21).  On June 25, 2009, plaintiff complained by a sick call request that he was having trouble seeing up close, which was a new problem.  (Docket Entries No.1, page 29; No.71-1, page 22).  On June 26, 2009, plaintiff was given another optometry evaluation; the

provider noted that plaintiff was wearing glasses but not the state-issued glasses.   (Docket Entries No.1, page 30; No.71-1, page 23).   A nurse administered another VAT on July 16, 2009.   (Docket Entries No.1-1, page 3; No.71-1, page 25).   The same day, an Allred Unit practice manager requested medical personnel to check plaintiff's glasses to make certain that he was wearing his own glasses.   (Docket Entries No.1-1, page 4; No.71-1, page 24).   The medical provider scheduled an appointment for plaintiff with an optometrist.   (Docket Entries No.1-1, page 5; No.71-1, page 26).   She reported to the practice manager on August 6, 2009, that when she went to pick up plaintiff's glasses for a prescription check, he had his free-world glasses on his head and did not have his state-issued glasses; a search of his cell yielded no state-issued glasses.[1]   (Docket Entries No.1-1, pages 9-10; No.71-1, pages 28-29).

After his transfer to the Ellis Unit, plaintiff was advised by Dr. Betty Williams on September 16, 2009, that he may have free-world glasses sent from his family if the Unit Warden approved.   (Docket Entries No.1-1, page 11; No.71-1, page 30).   Apparently, Warden Eileen Kennedy did not approve his request.   (Docket Entry No.1, page 6).

On October 6, 2009, plaintiff's mother submitted the TDCJ eyeglass prescription to a free-world provider, who compared the prescription to an old prescription issued in 2003. (Docket Entry No.1, page 10).   His mother noted that the store manager indicated that the new prescription was grossly stronger that the 2003 prescription and "most probably is not your prescription at all but someone else's entirely."   (*Id.*).   The new prescription was also stronger than his 2005 prescription from another free-world provider.   (Docket Entries No.1, pages 10-11; No.71-2, page 77).

---

[1] Plaintiff later told an Ellis Unit medical provider on April 6, 2010, that his state-issued glasses were taken during a shake-down.   (Docket Entry No.71-1, page 37).

At a sick call examination on February 26, 2010, plaintiff asked Dr. Williams if he could have new state-issued glasses made from free-world refraction; she advised him that this was not possible.  (Docket Entry No.71-1, pages 31-32).  She ordered another VAT and referred him to the TDCJ Optometry Department; Williams warned plaintiff that he would most likely have to wait two years to see an optometrist.  (*Id.*).  Plaintiff filed Step 1 Grievance Number 2010135689 on April 13, 2010, requesting an expedited eye appointment.  (Docket Entry No.10, pages 8-9).

On March 22, 2010, plaintiff submitted a sick call request in which he complained that he had been given the wrong prescription by the Allred Unit optometrist.  (Docket Entry No.10, page 3; No.71-1, page 33).  He refused a VAT on March 24, 2010.  (Docket Entry No.71-1, pages 35-36).  Notations in a chart review dated April 6, 2010, summarized plaintiff's chief complaints and requested a routine optometry referral for new glasses.  (*Id.*, page 37).  In mid-April, he requested another VAT.  (Docket Entries No.10, page 4; No.71-1, page 38).  On April 22, 2010, plaintiff was given another VAT.  (Docket Entry No.71-1, pages 40-41).  On April 26, 2010, the optometry referral was denied because plaintiff had not met the criteria.  (Docket Entry No.71-1, pages 43, 45).  On April 28, 2010, plaintiff's grievance was denied with a notation that his referral to optometry had been denied.  (Docket Entry No.10, page 9).

On May 17, 2010, plaintiff wrote to Dr. DeShields, stating that he was unable to see with his state-issued glasses and that Allred medical personnel had been unresponsive to his complaints because they believed he was "making all this up."  (Docket Entry No.1-1, page 19).  Plaintiff informed her that the state prescription was incorrect and that Ellis Unit medical providers refused to acknowledge the mistake and would not allow him to obtain a new prescription until the end of the year per normal procedures.  (*Id.*).  Dr. DeShields's office

responded on May 26, 2010, that plaintiff should attempt to resolve his issues through sick call requests or by grievance.  (Docket Entry No. 1-1, page 18).

Plaintiff was seen by medical providers on May 21, 2010, and July 27, 2010, for numerous ailments; at both appointments, plaintiff requested an optometry referral.  (Docket Entry No.71-1, pages 46-47).

On September 24, 2010, plaintiff wrote to Brad Livingston complaining that he had been given the wrong prescription and that he needed a new prescription to purchase state-issued glasses; he also informed Livingston that Livingston was directly responsible for the faulty medical contracts.  (Docket Entry No.10, page 14).  The same day, plaintiff submitted another sick call request for an optometry referral and was informed that he was scheduled for a totally new examination.  (*Id.*, page 18).

Plaintiff executed the present complaint on September 24, 2010.  (Docket Entry No.1, page 5).  He alleges that Dr. Williams, Warden Kennedy, Practice Manager Crawford, Executive Medical Director DeShields, and Executive Director Brad Livingston were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  He alleges that DeShields was responsible for inadequate staffing and that Livingston was responsible for an inadequate medical contract.  He further alleges that Williams, Kennedy, and Crawford engaged in retaliation.  (Docket Entry No.1, page 3).

On December 27, 2010, plaintiff amended the original complaint to add the Allred Unit optometrist, who issued the allegedly defective prescription.  (Docket Entry No.7).  He also sought to increase compensatory damages and a medical furlough for corrective eye surgery.  (*Id.*).

On March 3, 2011, plaintiff added as defendants TDJC, TTU, UTMB, and CMC. (Docket Entry No.13).   On December 9, 2011, plaintiff requested to add Dr. Callendar, the Director of UTMB on a claim of deliberate indifference to medical contract, deliberate indifference to understaffing, and deliberate indifference to inadequate medical policies and procedures.   (Docket Entry No.77).   On January 18, 2012, plaintiff amended his complaint to add Dr. Allen Hightower, the Director of CMC, as a party on the ground of deliberate indifference to an inadequate medical contract and ineffective policies.   (Docket Entry No.78).

## II. DISCUSSION

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right.   42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).   To state a cause of action under Section 1983, a plaintiff must allege two elements.   "First, the Plaintiff must allege that some person has deprived him of a federal right.   Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."   *Id.* at 640.

To successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendant's participation in the alleged wrong.   *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

### A. Defendants DeShields, Crawford, and Williams

Defendants Denise DeShields, Shandra Crawford, and Betty Williams move for summary judgment on grounds that plaintiff has failed to demonstrate deliberate indifference on the part of any defendant and has failed to overcome their entitlement to qualified and Eleventh Amendment immunity.   (Docket Entry No.70, page 7).   Defendants also contend that plaintiff has failed to exhaust his administrative remedies as to DeShields and Crawford.   (*Id.*).

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1. Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Moreover, an incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). The same is true regarding the decision to treat an inmate

in the Unit's medical department rather than to send him to outside medical providers or specialists. *See Alfred v. Texas Department of Criminal Justice*, 80 Fed. App'x 926, 927–28 (5th Cir. 2003). The question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Moreover, an inmate does not have a constitutional right to the treatment of his choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982)). Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Smith v. Allen*, 288 Fed. App'x 938 (5th Cir. 2008) (disagreement about treatment for shoulder injury).

## a. Dr. Betty Williams

Plaintiff alleges Dr. Williams refused to refer him to optometry for new glasses. (Docket Entry No.1, page 6). As documented *supra*, the record shows that plaintiff was afforded regular medical attention and care for his eyes on the Ellis Unit, where Dr. Williams is the Unit physician, thus, defeating his claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (noting that "medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference"). He was examined and treated for numerous ailments by Dr. Williams, numerous physician's assistants, and several nurses on the Ellis Unit, who administered vision tests and optometric

evaluations. Contrary to plaintiff's allegation, Dr. Williams referred him to the Optometry Department for new glasses but the referral was denied.[2] (Docket Entry No.70-8, pages 1-2).

This record supports the uncontroverted affidavit testimony given by defendants' expert, Dr. Steven Bowers, that the actions taken by Dr. Williams were appropriate and within the standard of care and scope of her authority. (Docket Entry No.72-1, page 4). Because the summary judgment record is wholly void of evidence that Dr. Williams acted with deliberate indifference to plaintiff's medical need, plaintiff fails to defeat her entitlement to qualified immunity. Defendants are entitled to summary judgment on this claim.

### b. Practice Manager Shanta Crawford

Plaintiff also claims that Practice Manager Shanta Crawford refused to refer him to optometry for new glasses. Crawford attests that she does not have the authority to make a clinical decision concerning a referral to a specialty clinic such as optometry . . . [or] to receive glasses from outside vendors." (Docket Entry No.70-7, page 3). Her responsibilities include "assuring that inmates receive medical care according to policy and procedure, supervising clerical and administrative staff, acting as liaison to family members, answering informal (I-60's)

---

[2] The record shows that on September 16, 2009, Dr. Williams advised plaintiff that he may have free-world glasses sent from his family if the Unit Warden approved. (Docket Entries No.1-1, page 11; No.71-1, page 30). On February 26, 2010, Dr. Williams advised plaintiff that he could not have new state-issued glasses made from free-world refraction; she ordered another vision examination and referred him to the Optometry Department but warned him he would most likely have to wait two years to see an eye doctor. (Docket Entry No.71-1, pages 31-32). On April 26, 2010, the optometry referral was denied because plaintiff had not met the criteria. (Docket Entry No.71-1, pages 43, 45). Plaintiff was seen by medical providers on May 21, 2010, and July 27, 2010, for numerous ailments; at both appointments, plaintiff requested an optometry referral. (Docket Entry No.71-1, pages 46-47). Providers noted that an optometry examination had been denied by the Optometry Department. (*Id.*).

The record also shows that after plaintiff filed the pending suit, Dr. Williams ordered another VAT per plaintiff 's sick call request. (Docket Entry No.71-1, page 49). She referred plaintiff to optometry and scheduled the appointment for December 6, 2010. (*Id.*, pages 52-53). Plaintiff was transferred to the Coffield Unit in October 2010.

The record further shows, as Dr. Bowers attests, that plaintiff was diagnosed with a progressive eye disease by Dr. Appel on June 24, 2011. (Docket Entries No.71-1, page 84; No.72-1, page 4). On August 5, 2011, plaintiff was fitted with new eye wear prescribed by Dr. Appel. (Docket Entries No.70-1, page 92; No.72-1, page 4).

and formal grievances, and performing unit audits on patient care, etc." (*Id.*, pages 2-3). *See Cooper v. Johnson*, 353 Fed. App'x 965, 968 (5th Cir. 2009) (noting that a practice manager employed by the University of Texas Medical Branch in the Texas prison system does not have the authority to diagnose a medical condition or determine treatment); *Berry v. Fitts*, Civil Action No.C-09-3, 2010 WL 345750, *9 (S.D. Tex. Jan. 22, 2010) (noting that a unit practice manager is not a direct care provider and does not get involved in giving clinical advice or diagnoses; a practice manager responds to grievances in addition to other responsibilities of daily operations).

The record shows that Crawford corresponded with plaintiff's family about his attempt to acquire new glasses.[3]   (Docket Entry No.70-3, pages 13-14).   She responded in a timely manner to plaintiff's grievance.   (Docket Entry No.71-2, page 6).   She investigated plaintiff's complaints about the medical treatment provided by Dr. Williams per plaintiff's grievance.   (*Id.*, page 13).   To the extent that plaintiff contends that the responses to any grievance by Crawford, or any other defendant, constitutes deliberate indifference or retaliation, such contention is without merit.   Plaintiff does not have a federally protected liberty interest in having grievances resolved to his satisfaction.   *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

In light of this record, which is void of evidence showing Crawford's deliberate indifference to plaintiff's serious medical need, the Court finds that Crawford is entitled to qualified immunity and defendants are entitled to summary judgment on this claim.

---

[3] Crawford wrote that plaintiff's medical records do not show that the allegedly defective glasses prescribed by the Allred Unit optometrist were sent back while plaintiff was at the facility for an incorrect prescription or repair. (Docket Entry No.70-3, page 13).  She further wrote that after his assignment to the Ellis Unit on September 11, 2009, plaintiff made several attempts to have free-world glasses sent in from his family, but he made no attempt to have the staff send his TDCJ glasses back to optometry for repair until April 19, 2010.  (*Id.*).  The record also showed that plaintiff "did not offer to purchase a pair or send the glasses back to optometry." (*Id.*).  Plaintiff's referral to optometry was denied due to the two-year stipulation per CMC policy.  (*Id.*).

### c. Dr. Denise DeShields

Plaintiff claims that Dr. DeShields refused to correct the prescription entered by the Allred optometrist.  (Docket Entry No.1, page 6).  He also claims that she was deliberately indifferent to understaffing.  (*Id*., page 3).  Dr. DeShields is the Executive Medical Director for Texas Tech Correctional Managed Health Care, which includes the Allred Unit.  (Docket Entry No.70-9, page 1).

As previously noted, plaintiff twice wrote to Dr. DeShields.  In the first letter, he complained that his efforts to obtain a copy of his eyeglass prescription had been blocked. (Docket Entry No.1-1, page 15).  Her office responded by letter on April 29, 2009, that he should address his complaints to medical staff through an informal process or by grievance.  (Docket Entry No.1-1, page 14).

After plaintiff transferred to the Ellis Unit, he was no longer incarcerated in a unit subject to Dr. DeShields's jurisdiction.  (Docket Entry No.70-9, page 2).  Nevertheless, plaintiff wrote to DeShields on May 17, 2010, after the referral to the optometry department was denied. He complained the Allred Unit optometrist's prescription was incorrect and that Ellis Unit medical providers refused to acknowledge the mistake and would not allow him to obtain a new prescription until the end of the year per normal procedures.  (Docket Entry No.1-1, page 19). Dr. DeShields's office again responded on May 26, 2010, that plaintiff should attempt to resolve his issues through sick call requests or by grievance.  (Docket Entry No. 1-1, page 18).

Neither letter reflects that Dr. DeShields had any personal involvement in plaintiff's medical care or that she failed to respond appropriately to his letters.  Civil rights claims must allege the personal involvement of the defendants.  *Thompson v. Steele*, 709 F.2d

381, 382 (5th Cir. 1983).  Without evidence showing such involvement, plaintiff fails to defeat

Dr. DeShields' entitlement to qualified immunity.

To the extent that plaintiff sues Dr. DeShields in her capacity as a supervisor of

the Allred Unit optometrist, who allegedly provided plaintiff with an incorrect prescription, or

because of understaffing of medical personnel on the Allred Unit, he is not entitled to relief.

Under Section 1983, supervisory officials are not liable for subordinates' actions on any

vicarious liability theory.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  A supervisor may

be held liable only for implementing a policy that repudiates constitutional rights and the policy

is the moving force of the constitutional violation.  *Id*.  Plaintiff does not allege any facts to show

that DeShields was personally responsible for alleged error or that she implemented deficient

policies that resulted in a wrong diagnosis or understaffing.

Defendants Williams, Crawford, and DeShields are entitled to summary judgment

on plaintiff's deliberate indifference claims.

## 2. Sovereign Immunity

Defendants are correct that they are entitled to Eleventh Amendment immunity

for claims against them in their official capacity under § 1983.  Congress has not waived

sovereign immunity for § 1983 suits.  *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Will v.*

*Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (noting that "neither a state nor its

official acting in their official capacities are 'persons' under § 1983"); *Oliver*, 276 F.3d at 742

(holding that "the Eleventh Amendment bars recovering § 1983 damages from TDCJ officers in

their official capacities").  Defendants are employed as health care providers employed by

UTMB, and UTMB is a state agency, immune from a suit for money damages under the

Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

Nor does the *Ex Parte Young*, 209 U.S. 123 (1908) exception for a claim against defendants for prospective injunctive relief to prevent a continuing violation of federal law apply here since plaintiff is no longer confined on the Allred or Ellis Units. Therefore, defendants DeShields, Williams, and Crawford no longer have any control, authority, or responsibility over plaintiff. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Plaintiff's transfer back to either facility is too speculative to warrant relief. Accordingly, his claims for equitable and declaratory relief from these defendants are moot. *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

Defendants are entitled to summary judgment on plaintiff's claims against them in their official capacities.

## B. All Defendants

Because plaintiff is a prisoner, he is subject to the provisions of the Prison Litigation Reform Act, which requires that the district court review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the Court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 1915(e)(2)(B).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation

of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).   A complaint may be dismissed for failure to state a claim if the plaintiff does not allege enough facts to state a claim to relief that is "plausible" on its face.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   (*Id.*).

## 1. Deliberate Indifference

Plaintiff claims that Warden Eileen Kennedy and Executive Director Brad Livingston were deliberately indifferent to his serious medical need for corrective lenses. (Docket Entry No.1, pages 3, 6).   Plaintiff claims that Warden Kennedy refused to allow him to have free-world glasses sent in after Dr. Williams approved the request, in retaliation for plaintiff seeking a redress of grievances.   (*Id.*, page 6).   He claims that "Brad Livingston is directly responsible for the medical contract that is so inadequate as to amount to deliberate indifference."   (*Id.*).   He also claims that Livingston responsible for the patient liaison program that refused to assist him in this matter.   (*Id.*).

Plaintiff's claims against Kennedy and Livingston are conclusory and without any factual support in his pleadings.   *See Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) (conclusory allegations are insufficient to state a claim).   Therefore, these claims are subject to dismissal.

A liberal construction of plaintiff's pleadings reflects that he seeks relief from the Allred Unit optometrist, who allegedly prescribed the wrong lenses.   (Docket Entry No.7).

Plaintiff, however, failed to plead any facts that would give rise to a claim of deliberate indifference by this unnamed defendant.  At most, he has alleged a claim of negligence, which is not actionable under section 1983.  Negligence and medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with his medical treatment does not establish a constitutional violation.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Domino,* 239 F.3d at 756 (an incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met).  Accordingly, plaintiff's claim against the unnamed Allred Unit provider is subject to dismissal.

Likewise, plaintiff's claims against Dr. Hightower and Dr. Callendar of deliberate indifference with respect to the adequacy of medical contracts, staff training, policies and procedures, and to understaffing (Docket Entries No.77, No.78) are conclusory and without factual support in his pleadings.  Therefore, plaintiff's claims against Dr. Hightower and Dr. Callendar are subject to dismissal.

## 2. Retaliation

Plaintiff claims that defendants Williams, Crawford, and Kennedy retaliated against him because of the grievances that he filed or because of his recurring medical complaints.  (Docket Entry No.1, pages 3, 6).  Claims of retaliation from prison inmates are regarded with scepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).  To prevail on a claim of retaliation a prisoner must establish the following elements: (1) the violation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  Further, the inmate must allege more than his personal belief that he is the

victim of retaliation.  *Jones*, 188 F.3d at 325.  To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred.  *Woods*, 60 F.3d at 1166.

Plaintiff's recitation of the chronology of events in this case does not give rise to an inference that Dr. Williams, Practice Manager Crawford, or Warden Kennedy retaliated against him because of the grievances that he filed or because of his recurring medical complaints.  Plaintiff states no facts showing that defendants acted with a retaliatory animus or that they engaged in any retaliatory adverse act.  To the extent that plaintiff contends that the responses to any grievance by defendants give rise to a retaliation claim, such contention is without merit.  *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (an inmate does not have a federally protected liberty interest in having grievances resolved to his satisfaction).

Plaintiff's retaliation claims against defendants Williams, Crawford, and Kennedy are legally frivolous and therefore, subject to dismissal.

### 3. Equal Protection and Due Process

Plaintiff states no facts in any of his pleadings to show that any defendant engaged in purposeful or intentional discrimination that would give rise to an equal protection claim.  *See Stefanoff v. Hays County*, 154 F.3d 523, 526 (5th Cir. 1998) (noting to state an equal protection claim, the movant must show that defendant treated two or more classifications of similarly situated prisoners differently and that that such treatment had no rational relation to any legitimate governmental objective); *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (noting that movant must also demonstrate that defendant acted with a "discriminatory purpose"); *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (stating that "disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on

Equal Protection grounds by whomever it has negatively impacted").  "A constitutional violation may not be established by a reliance upon unsupported assumptions."  *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).  Mere conclusory allegations are insufficient to state a claim. *Moody*, 857 F.2d at 258.  Accordingly, plaintiff's equal protection claims are subject to dismissal as legally frivolous.

To the extent that plaintiff sets forth a substantive due process claim, such claim is nothing more than a restatement of his Eighth Amendment deliberate indifference claims.  The Court notes that many of the rights guaranteed by the Eighth and Fourteenth Amendments are congruous.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ( finding "Due Process Clause affords [] no greater protection than does the Cruel and Unusual Punishments Clause"); *Berry v. City of Muskogee*, 900 F.2d 1489, 1494, n. 6 (10th Cir. 1990) (noting "with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous").  However, when a convicted prisoner alleges a violation of a constitutional right secured by both the Eighth and the Fourteenth Amendments, the Eighth Amendment's explicit guarantee of prisoner rights controls over the Fourteenth Amendment's more general substantive due process protections.  *Austin v. Johnson*, 328 F.3d 204, 210 n. 10 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 735 (5th Cir. 2002) (stating that "claims that are covered by such specific constitutional provisions must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process").  Because plaintiff has asserted claims that arise under the Eighth Amendment, and the Court has addressed such claims under the Eighth Amendment, his substantive due process claim is subject to dismissal.

### 4. Supervisory Liability

Plaintiff's pleadings fail to show the personal involvement of defendants Dr. Denise DeShields, Warden Eileen Kennedy, Director Brad Livingston, Dr. Callendar, or Dr. Hightower with respect to the medical treatment that plaintiff sought or received.  Instead, plaintiff seeks relief from these individuals in their supervisory capacities as administrators of various state agencies, who are in some respect responsible for creating and implementing policies and procedures, and hiring and managing staff.

Theories of vicarious liability, such as *respondeat superior*, cannot support a cause of action under section 1983.  *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983).  A supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  To state an actionable claim, a civil rights plaintiff must establish a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation. *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981).

Although plaintiff makes sweeping allegations against these defendants on various grounds related to their administrative roles and to the creation and implementation of various policies and procedures, he states no facts to support these allegations and no facts that would give rise to a causal connection between the acts or omissions of these defendants and any constitutional violation.  (Docket Entries No.7, No.13, No.44, No.52, No.63, No.77, No.78).  His unsupported, conclusory allegations are insufficient to establish the denial of a constitutional right.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Accordingly, plaintiff's claims

against defendants Dr. Denise DeShields, Warden Eileen Kennedy, Director Brad Livingston, Dr. Callendar, and Dr. Hightower are subject to dismissal as legally frivolous.

### 5. Sovereign Immunity

Plaintiff's § 1983 claims for damages or injunctive relief against UTMB, TDCJ, CMC, and TTU are barred by the state's sovereign immunity.  Governmental entities are not "persons" within the meaning of § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  UTMB, TDCJ, CMC, and TTU are state agencies, immune from a suit for money damages under the Eleventh Amendment.  *Lewis*, 655 F.3d at 630.

To the extent that plaintiff seeks monetary relief from the unnamed Allred Unit optometrist, Dr. Callendar, or Dr. Hightower, who are employees of state agencies or any other defendant in his or her official capacity in this case, such claims are also barred by the state's sovereign immunity.  *Id.*

### 6. Loss of Enjoyment of Life

To the extent that plaintiff seeks to bring a state law claim regarding the loss of enjoyment of life, the Court declines to exercise jurisdiction over this claim.  28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

Based on the foregoing, the Court ENTERS the following ORDERS:

1.   Defendants' Motion for Summary Judgment (Docket Entry No.70) is GRANTED.  All claims against defendants Dr. Betty Williams, Shanta Crawford, and Dr. Denise DeShields are DISMISSED.

2.   Plaintiff's claims against all other defendants in this case are DISMISSED as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

3.      Plaintiff's state law claim is DISMISSED without prejudice.

4.      Plaintiff's Motion for Leave to File Motion for Summary Judgment and his Motion for Summary Judgment (Docket Entry No.88) are DENIED.

5.      All other pending motions are DENIED, AS MOOT.

6.      This complaint is DISMISSED WITH PREJUDICE.

The Clerk shall provide the parties with a copy of this Order.

SIGNED at Houston, Texas, this 20th day of September, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE